Good morning, Your Honors. May it please the Court, my name is Dana Mendelsohn and I'm arguing on behalf of Petitioner Angel Gomez Zarate. The issue here in this case is whether the border stop that Mr. Gomez Zarate had in 1993 interrupts his continual physical presence for purposes of cancellation of removal. Now, reading from page 5 of Valadez-Munoz v. Holder, it was decided by this Court on 2010, October 28, the rule in order to determine whether or not such a stop interrupts the continuous physical presence is that it does not, unless there is evidence that the alien was formally excluded or made subject to an order of expedited removal, was offered an accepted opportunity to withdraw his or her application for admission, or was subjected to any other formal documented process pursuing to which the alien was determined to be inadmissible to the United States. Counsel, we have... Ms. Mendelsohn, Judge Gould, if I could ask you a question, please. Yes, Your Honor. I think the outset, if we could address it, not in terms of just a border stop, but it's a stop and he's prosecuted. For having a false document, because we've got to take that into account. So I want to know your views on that, but also how do you distinguish the Second Circuit case of Asencio Rodriguez, where the guy's prosecuted for illegal entry, and it's similar in some other ways, but how do you deal with that? And would we be creating a circuit split if we ruled for you? Yes, Your Honor. Indeed, it is completely distinguishable. And the reason is, and the question is, whether or not at the end of the formal process, the alien was determined to be inadmissible. Now, the formal process that Mr. Gomez had was a separate criminal proceedings, in the end of which he was not determined to be inadmissible. The language of the statute under which Mr. Gomez was convicted has nothing to do with inadmissibility. Now, the Second Circuit case that Your Honor mentioned, there they do not say that any formal process would constitute a break in the continued physical presence. They are just saying that in that particular case and under the plea that that particular respondent took, it did. And why? Because that respondent took a plea under 8 U.S.C. 1325A1, which is any alien enter or attempt to enter the United States at any time, other than designated by the immigration officer. An alien arriving in the United States at any time or place is inadmissible. So, says the court, accordingly, his conviction, that conviction, following his plea of guilty constitute an admission to the facts that rendered him inadmissible under 1182A6AI. So if that court of the Second Circuit meant to say that any formal process, any criminal proceeding, anything that happened following a stop at the border, they would not say this. They would just say that and stop. But they're saying no, just in this case, because the language of the statute of illegal entry is essentially admitting he's admissible. So they're saying, well, then he's determined to be admissible. But our case is not like that, because the statute, as I said, the statute under which Mr. Gomez took a plea has nothing to do with it, because it could be to defraud the United States in any way. It could be a criminal that takes upon himself another idea. It could be anything. Nothing the language of that statute says mention the word inadmissibility or anything like that. That's the distinction. Okay. Thank you, Counsel. That's a very helpful response. And I apologize for getting you off your argument at the start and right to the issue that was on my mind. Counsel, let me just make sure I understand this. He was originally charged with two counts of violating U.S. law, but he only pled to one. Is that correct? Yes, Your Honor. Just the false immigration documents. Yes, Your Honor. Okay. Now, if he had been arrested at the border for possession of cocaine and had been processed very quickly, pled guilty, and then was turned back across the border, that would not interrupt his continuous presence in the United States, even though he had been formally subject to process and in lieu of serving a jail term or a term of probation, had been turned back across the border to Mexico. No, Your Honor, not according to this law, because, first of all, possession of cocaine or any crime violating drug laws makes it inadmissible to the United States by law. There is no waiver to that under immigration law. So, but, so he would be admissible in the end. But he, the issue here is whether or not he knew he had a chance. He was offered to go in front of an immigration judge and argue his case. Now. What would he have said? I'm sorry? What would he have said if he had gone before an I.J.? Well, Your Honor, in this particular case. Not very much. Much. Because in this particular case, Mr. Gomez was engaged to be married to the woman he married later, because we know that he was put in proceedings because the woman he married, a United States citizen, petitioned for him, and they were going through an adjustment process. And then, in the end, the relationship didn't work out, and in the end, he stopped the process, so he didn't end up adjusting. After they stopped the border in 1993, Mr. Gomez was given, actually, a travel document, and he came here, I believe, two times legally. In fact, in the notice to appear, he's charged for an overstay, because he came here legally. So had he been stopped, had he been said to an immigration judge, then he would have married this United States citizen, a girlfriend, a little bit earlier than he did, and adjusted status, and he would be perfectly fine. Also, I would like to say, this is in this particular case, but also, this is kind of irrelevant under the law, because if that were the case, then we wouldn't have all these cases that say that merely a stop at the border and turning back does not break the continuous present for purposes of consolidation or removal. Because if the question were, what would the alien do, then we wouldn't have anything, any stop. We just, most aliens don't have anything to do, unlike Mr. Gomez at that time. Most aliens just come and they don't have anything to say. But despite that, all courts pretty much agree that if it's just a simple turn at the border, that's fine, whether or not the alien had something to say before an immigration judge. I think we have your argument in hand. Do you want to save some time for rebuttal? I'm sorry? Do you want to save some time for rebuttal? I would like to reserve three minutes for rebuttal. Well, you've got two and a half left, so why don't you let the government talk. Yes, Your Honor. The other thing I wanted to say at first, both the BIA, Border Immigration Appeal, and the Respondent made the same mistake, saying that the stop was akin to an expedited removal. Of course, that is a mistake. Expedited removal did not exist in 1993. We mentioned it in our brief. It started with the IRA-IRA of 1996, 1997. At that time in 1993, the people came, alien came before the judge, and that was it. And I will stop here. All right, very good. Thank you. We'll hear from the government. May it please the Court. My name is Hannah Farber on behalf of the Attorney General. When Petitioner attempted to reenter the United States in 1993 using a false birth certificate, he was arrested by Border Patrol, detained for five days, charged and convicted in Federal District Court of a crime related to his attempted illegal reentry, transferred back to INS custody, and only then returned to Mexico. Based on these circumstances, the agency reasonably determined that the process by which Petitioner departed the United States in 1993 was sufficiently formal to constitute a break in his continuous physical presence. A central consideration of the- Counsel, Judge Gould, if I could ask you, again, I don't mean to be rude interrupting you guys at the outset of your argument, but for me at least it would help. If you could get right to Asencio Rodriguez and explain to me your argument as to whether you think that case would be controlling if it was in our circuit, so that if we went the other way it would be creating a circuit split, and how you respond to the Petitioner's argument that that case involved a conviction for something that determined the alien was not admissible, so that it's different in that respect. Well, first of all, Asencio Rodriguez was the subject of my 28-J letter, so I would reiterate the same statements I made there, which is that in Asencio Rodriguez the Second Circuit found that the alien's criminal conviction for his attempted illegal reentry, the same as what happened here, was the functional equivalent of an adjudication of inadmissibility. So contrary to what Petitioner's counsel has asserted, Asencio Rodriguez demonstrates that regardless of whether or not the conviction explicitly finds that the alien is inadmissible, it is the functional equivalent of an adjudication of that finding. And in this case So how would his conviction here of giving the false document be the functional equivalent of a finding of inadmissibility? Petitioner's criminal conviction here for possession of a false identification document rendered him inadmissible. So despite the fact that his criminal conviction didn't make an explicit finding, just as the Second Circuit held, it was the functional equivalent of an adjudication of his inadmissibility. Okay. Thank you. Is false document renders him inadmissible under what? It renders him inadmissible under, sorry, under INA 240A-B1C for having been convicted of an offense under 1227A-3D, falsely claiming U.S. citizenship. Okay. Now, did the Board rest on that ground? The Board did not rest on that ground, and that's why I relegated that finding to a footnote. I would argue that How can we affirm that if the Board didn't rest on that ground? Wouldn't we have to send it back? My argument would be that sending it back would be futile because But we do have, we try to keep these lines pretty straight. We try to give the Board its due and let the Board have its say. These are old principles under Chenery. It's true. If the Board didn't rest on that ground, don't we have to send it back? It's not actually determinative in this case. For one, Asensio Rodriguez came out after the Board's decision, so it couldn't have necessarily Well, I asked you, you told me that the false documents rendered him inadmissible, and I asked you why it rendered him inadmissible, and you answered that it rendered him inadmissible under INA 240 and Section 1227. Correct. But those are not the grounds on which the Board rested its decision. So do you have a defense of the Board's own decision here that I do, and I'm happy to get to that. The Board, its focus was on the formality of the process by which the alien departed, and that was also a key element of Asensio Rodriguez. But we can look at it simply for the process itself, and the 28J letter that I wrote referring to Valdez Muniz stands for that proposition, where the central consideration is the formality of the process by which the alien departs. So what we have here is a case that went well beyond a mere turnaround at the border, and the Board looked at that and found that the alien had been arrested, charged and convicted of a criminal offense relating to his attempted illegal reentry, detained for five days, and only then returned to Mexico. He was charged with two different things. He was. But he only pleads to one, and that's the false document. That's right. Now, could you be a U.S. citizen trying to come in at the border from Mexico and possess that same document and be charged under this law? I believe one could. However, the same case that I've just mentioned, Valdez Muniz, talks about that very instance, not a U.S. citizen, but the instance that occurred in this case of a Mexican citizen presenting a false identification document and claiming U.S. citizenship. And the court here found that despite the fact that the alien did not claim to or plead to claiming false citizenship, that the evidence there was sufficient to find exactly that. So the facts in this case are identical to those in Valdez Muniz, and I don't think that his plea, in fact, is controlling. Okay. But let me repeat my question. I'm not sure I got an answer to it. If he had been a U.S. citizen possessing this document at the border, would he have been subject to arrest? Would a U.S. citizen be subject to arrest under this provision for possessing this document? I mean, is there something inherent in the nature of possessing a false immigration document like that that lets us know that an adjudication suggests that this is an alien and not a U.S. citizen? To be honest, I don't actually know the answer to that question, but what I do know is that he admitted to immigration officials that he was not a U.S. citizen, and we have clear evidence that he was making a false claim and that the process of his claim was false. Which is likely why he was turned over to INS and returned in lieu of staying in the United States and being subject to probation. Precisely. And what's distinguishable here is that the circumstances of a mere turnaround are where an alien presents himself without any documentation showing that he is admissible and immigration authorities simply send him right back across the border. We have something that far exceeds that process, and therefore the board based its decision on the formality of the process by which the alien returned, which was more than a mere turnaround. What part of the process do you think takes it from a mere turnaround case to a formality? Is it the charging? Is it the turning over? Is it the time? What are those elements? If we were to say this case is distinguishable from the turnaround cases, what factors would you, what factor do you think is dispositive? I'm not sure that I could name just one. I think there are several. It's a puzzling thing. I mean, I think there's a bit of an element of we know when we see it, and this seems to be formal, and therefore it doesn't count. But drilling down a little bit deeper, I'm not sure on what part of the process the BIA really rely. Well, with turnaround cases, it is, as you mentioned, a short window. Typically the alien arrives at the border. It becomes clear that he is inadmissible, doesn't have documentation with which to enter, and is immediately escorted back or, at the very most, briefly detained for a period of hours. Here we have an alien paroled into the United States and detained for five days. So that is one key distinction. But also there was a- Is it one day? Is it two days? I mean, what's the touchstone here? Is it the detention? Is it the charge? Is it the plea? Is it the turning over to INS? Well, according to the board, it was the formality of the process. And in this case, we have a formal documented process, which was the criminal conviction. So I think coupled with the length of time and the detention, that certainly bolsters the finding. But I would argue that the dispositive factor is the formality of the process. And here we have much more than simply- Counsel, if I could ask you a question on that. So it's a formal process, and it takes time, and it results in a conviction. But it's not a formal process that says that he's inadmissible, right? I mean, couldn't there be- I mean, could there- Am I right in thinking there could be like a Mexican person who is not a U.S. citizen who comes to the border and for some reason they are admissible? Let's say they got approval from the AG to come back. But yet they present a false document saying they're a citizen. They could be convicted of presenting the false document, but it wouldn't necessarily mean they're inadmissible. So, I mean, here, if they're not determined to be inadmissible, why should we say their presence is broken? Just because of a long process? Well, for one, the formality, as I've mentioned. Two, regardless of whether or not immigration officials documented a finding of inadmissibility, as I mentioned before, it's clear that his criminal conviction rendered him inadmissible. And even without that, looking at one of the other circumstances that breaks presence in Avalos-Muniz, where an alien is offered the opportunity to withdraw his application for admission and simply take administrative voluntary departure, there isn't a finding of inadmissibility there. It's that the alien recognizes that he is inadmissible. So that, too, is comparable to the situation here. So let's assume that he'd been acquitted, that he didn't plead guilty. Does that make a difference? He seemed to be focused on the process rather than the result of the process. I have only the facts before this case, and I think those facts are sufficient. I can't really speculate on what would have happened if it were a different case. Okay. I have another question that I suspect you can answer. Do all the circuits have a rule like the Ninth Circuits where a mere turnaround at the border does not interrupt continuous physical presence, or are the circuits split on that issue? From my understanding, the Ninth Circuits case law on a mere turnaround is consistent in all of the different circuits. Okay. Thank you, counsel. Thank you. Rebuttal? You've got about a minute and 50. I would like to answer Your Honor's question. This law under which Mr. Gomez was convicted was not created for illegal aliens and unlike the alien in the Second Circuit's case. It was just created for criminals. This is first of all. Secondly, the Respondent is trying over and over to punish Mr. Gomez about something he did not do, which is a false claim to citizenship. What he did not do, that he got committed, he didn't plead to it. Now, what he did plead to does not make him inadmissible, and the proof is in the notice to appear where number three says, you were admitted to the United States in 1999, six years after that conviction, and they knew about the conviction, and despite the conviction, he was admitted. So what the BIA is concentrating on as far as process, they are saying, well, it looks like it was sort of an expedited removal. That, of course, is an error. Expedited removal did not exist. And the rule that is accepted by just about everybody and stated, as I stated before by this Court, is that there has got to be evidence. Evidence. There is no evidence here of removal, any kind, of that he was given any opportunity to not go before a judge and sign a document. Nothing like that. That simply did not happen. So the BIA made a mistake. The conviction is irrelevant, criminal proceeding that has nothing to do with immigration, and his time in immigration was very short. They turn him over to criminal court, and then when he came back to their custody, they immediately sent him to Mexico. So he was in their custody a very short time. That is the thing. So it's exactly like a simple turnover. Thank you, Counsel. Thank you both for your arguments. Interesting case. And the case will be submitted for decision.
judges: Thomas, Gould, Bybee